829 F.2d 1363
 Dockie PRATER, Petitioner,
v.
HITE PREPARATION COMPANY; Old Republic Companies;
Director, Office of Workers' Compensation
Programs; and United States Department
of Labor, Respondents.
 No. 86-3653.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 9, 1987.
Decided Sept. 22, 1987.
 
 Albert A. Burchett (argued), Prestonsburg, Ky., for Prater.
 Ronald E. Gilbertson, Kilcullen, Wilson & Kilcullen, Benefits Review Board, U.S. Dept. of Labor, Thomas L. Holzman, Nicholas Levintow, Office of the Solicitor, U.S. Dept. of Labor, Washington, D.C., for respondents.
 Mark E. Solomons, Arter & Hadden, Washington, D.C., Laura Metcoff Klaus (argued), for Hite/Old Republic.
 Before WELLFORD, MILBURN and NELSON, Circuit Judges.
 WELLFORD, Circuit Judge.
 
 
 1
 This is an appeal from a denial of black lung benefits. Prater, a coal miner, filed a claim for federal Black Lung Benefits Act benefits on April 30, 1979. On October 5, 1979, the Department of Labor (DOL) initially notified the claimant that he was "eligible for benefits", but none were awarded because he was still working. He quit working on November 15, 1979. The employer, Hite Preparation Company, however, denied liability and the claim was further processed by the DOL. A hearing was held before an Administrative Law Judge (ALJ).
 
 I.
 
 2
 Claimant testified that he is 66 years old and has a ninth grade education. Approximately the first ten years of his twenty-eight years of coal mine employment were underground working as a Joy machine operator and coal loader. For the remainder of his employment he drove a truck. Despite the difference in the kind of work, claimant stated that he could not tell any difference in the dust conditions. He stated that part of the time there was more dust outside the mine than inside and that from both types of jobs his clothes and body would be covered with coal dust, and that every day he breathed dust.
 
 
 3
 Prater stopped working because he claimed that his breathing problem prevented him from doing his job properly, and that it began to get progressively worse during the last eight or nine months. He stated that he presently undergoes breathing tests on a regular basis and that he also goes to a breathing clinic twice a week to receive some sort of steam treatment. Prater claims that he is unable to climb a hill, has difficulty climbing stairs, and can only walk one-quarter to one-half of a mile on level ground before he has to stop and rest. The claimant stopped smoking about nine or ten years ago, but he had previously smoked for thirty years.
 
 
 4
 The ALJ reviewed the conflicting medical evidence and declined to invoke the interim presumption of disability. He held Prater not to be entitled to benefits.
 
 
 5
 Prater appealed the ALJ's decision to the Benefits Review Board (BRB); the Board affirmed. Prater then appealed to this court. Jurisdiction is proper under 33 U.S.C.A. Sec. 921(c) (1986). Prater principally contends that the ALJ should have invoked the presumption under 20 C.F.R. Sec. 727.203(a)(1)-(3) and should have held the presumption not to be rebuttable. We affirm the denial of benefits.
 
 II.
 
 6
 Before addressing the merits of Prater's claim, we note that we were initially concerned that this appeal may be moot. From the record it appears that the Kentucky Workers' Compensation Board declared that Mr. Prater was occupationally disabled "based on the medical testimony and the fact that plaintiff has been a coal miner and exposed to coal dust for more than 30 years", and it awarded him $121.00 per week, plus medical expenses, "for so long as he is so disabled." There is no indication from the record that Prater is not receiving this award, and appellee claims that the Kentucky award "exceeds the amounts which could be paid under the federal program." If found entitled to benefits under the federal act, it is provided that "[t]he amount of benefits payable under this section shall be reduced, on a monthly or other appropriate basis, by the amount of any compensation received under or pursuant to any Federal or State workmen's compensation law because of death or disability due to pneumoconiosis." 30 U.S.C.A. Sec. 932(g) (1986).
 
 
 7
 Notwithstanding our question about whether an award by this court would have any economic effect, we are persuaded to address the merits due to representations by claimant's attorney at oral argument that there are considerable collateral benefits that might accrue should we award benefits. We therefore pass to consideration of the merits.
 
 III.
 
 8
 Prater's first argument is that the ALJ erred as a matter of law by not invoking the interim presumption of disability found at 20 C.F.R. Sec. 727.203(a)(1). Subsection (a)(1) provides that "[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, ... if ... (1) A chest roentgenogram (X-ray), ... establishes the existence of pneumoconiosis (see Sec. 410.428 of this title)[.]" 20 C.F.R. Sec. 727.203(a)(1) (1986).
 
 
 9
 The record discloses that numerous chest x-rays were taken and read by various doctors. The ALJ adequately summarized the x-ray evidence as follows:
 
 
 10
 1. Date of original X-ray: 7/1/79 (No exhibit)
 Physicians/Credentials: Unknown
 Impression: Unknown
 a. Date of rereading: 4/20/80 (DX 24)
 Physician/Credentials: G.N. Combs/"B" reader--Board
 Certified Radiologist
 Impression: No evidence of pneumoconiosis
2. Date of original X-ray: 7/2/79 (DX 15)
 Brent Brandon/"B" reader--
 Physician/Credentials Board Certified Radiologist
 Impression: 1/1 q in 2 zones
3. Date of original X-ray: 10/24/79 (DX 29,p.9)
 Physician/Credentials: Robert Penman/None
 Impression: 1/1 p
4. Date of original X-ray: 11/7/79 (DX 26,p.9)
 Physicians/Credentials: Lowell D. Martin/"A" reader
 Impression: 1/1 q
 a. Date of rereading: 8/25/81 (CX 1)
 Physician/Credentials: David White/"A" reader--Board
 Certified Radiologist
 Impression: 1/1 q
5. Date of original X-ray: 11/26/79 (DX 21)
 Physician/Credentials: G.N. Combs/"B" reader--Board
 Certified Radiologist
 Impression: No evidence of pneumoconiosis
6. Date of original X-ray: 12/4/79 (DX 29)
 Physician/Credentials: William F. Clarke/"A" reader
 Impression: 1/2 p-q
7. Date of original X-ray: 1/30/80 (DX 25,p.9)
 Physician/Credentials: G.N. Combs/"B" reader--Board
 Certified Radiologist
 Impression: No evidence of pneumoconiosis
8. Date of original X-ray: 2/25/80 (DX 23)
 Physician/Credentials: Richard P. O'Neill/None
 Multiple abnormalities need
 further radiographic work up as
 Impression: well as clinical correlation
9. Date of original X-ray: 2/29/80 (DX 22)
 Physician/Credentials: Ralph C. Quillin/"B" reader--
 Board of Certified Radiologist
 Impression: No evidence of pneumoconiosis
10. Date of original xrays: 3/11/80 DX 27,p.14)
 Physician/Credentials William H. Anderson/None
 Impression: 2/2
 a. Date of rereading: 1/4/81 (EX 5)
 Physician/Credentials: Benjamin Felson/"B" reader--
 Board Certified Radiologist
 Impression: No evidence of pneumoconiosis
 b. Date of rereading: 11/16/81 (EX 1)
 Physician/Credentials: G.N. Combs/"B" reader--Board
 Certified Radiologist
 Impression: No gross evidence of
 pneumoconiosis
 c. Date of rereading: 11/27/81 (EX 2)
 Physician/Credentials: Ralph C. Quillin/"B" reader--
 Board Certified Radiologist
 Impression: 0/0
 d. Date of rereading: 12/22/81 (EX 4)
 Physician/Credentials: Jerome F. Wiot/"B" reader--
 Board Certified Radiologist
 Impression: 0/0
 e. Date of rereading: 12/28/81 (EX 3)
 Physician/Credentials: Harold B. Spitz/"B" reader--
 Board Certified Radiologist
 Impression: 0/0
11. Date of original X-ray: 4/22/80 (DX 28)
 Physician/Credentials: Frank T. Varney/None
 Impression: 1/1 q
 a. Date of rereading: 5/2/80 (DX 14)
 Physician/Credentials: W.S. Cole/"B" reader--Board
 Certified Radiologist
 Impression: Unreadable.
 
 
 11
 Because several doctors diagnosed qualifying values based on their x-ray readings, Prater believes the interim presumption of disability should have been invoked. He cites Couch v. Secretary, 774 F.2d 163 (6th Cir.1985),[1] for the proposition that "[s]ince the earliest chest x-ray[s] ... are positive for pneumoconiosis and since these x-ray readings are uncontradicted by prior readings, the chest x-ray evidence triggers the interim presumption as a matter of law ".
 
 
 12
 To invoke the interim presumption based on x-ray evidence, the claimant must prove by a preponderance of the evidence that the x-ray evidence establishes pneumoconiosis. A single positive reading contradicted by other negative readings is not necessarily sufficient to invoke the presumption, and this court may not reverse the ALJ's finding that the claimant is not entitled to the presumption if substantial evidence supports his decision.[2] E.g., Back v. Director, OWCP, 796 F.2d 169, 171-72 (6th Cir.1986); Couch, 774 F.2d at 166-68.
 
 
 13
 Back is analogous and counsels in favor of affirming the ALJ in this case. We considered in Back whether the claimant's x-ray evidence invoked the interim presumption under Sec. 727.203(a)(1), and held that it had not. Arguments substantially similar to those urged by claimant in this case were urged in Back:
 
 
 14
 Back argues that the 1976 X-ray and the first reading of the 1980 X-ray satisfied Sec. 727.203(a)(1) since they established the existence of pneumoconiosis. He contends that a single positive X-ray satisfies the requirement of Sec. 727.203(a)(1) and once such a reading is obtained, the only remaining issue is whether the presumption has been rebutted. This was the conclusion of the en banc court in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986). Since a negative X-ray is not sufficient to rebut a presumption once invoked, Back argues that it was error for the ALJ and BRB to rely on the negative 1973 X-ray and the re-reading of the 1980 X-ray.
 
 
 15
 We believe Back confuses the question of using a negative X-ray to rebut a previously established presumption with deciding whether the presumption has been established at all when there are conflicting X-ray readings. In Ansel v. Weinberger, 529 F.2d 304, 310 (6th Cir.1976), we held that a presumption of totally disabling pneumoconiosis under 30 U.S.C. Sec. 921(c)(4) could not be rebutted by evidence of a negative X-ray. This is so because the Sec. 921(c)(4) presumption presupposes the existence of a negative X-ray and bases the presumption on other evidence of a totally disabling respiratory or pulmonary impairment. In Ansel, there was no question of whether X-rays showed sufficient evidence of impairment to invoke a presumption of disability. The presumption was triggered on the basis of other evidence of a totally disabling respiratory or pulmonary impairment. The error in Ansel was the use of a negative X-ray to rebut a presumption based on other evidence.
 
 
 16
 The question in the present case is a different one: was the existence of pneumoconiosis established by X-ray evidence? ...
 
 
 17
 Where there is a single X-ray that is read as positive, the Secretary may not create a conflict in the evidence by having that X-ray re-read as negative. Dickson v. Califano, 590 F.2d 616 (6th Cir.1978); Lawson v. Secretary of Health and Human Services, 688 F.2d 436, 438-39 (6th Cir.1982). Because of the progressive nature of pneumoconiosis, earlier negative and later positive X-rays of the same individual are not necessarily in conflict. Haywood v. Secretary of Health and Human Services, 699 F.2d 277, 284 (6th Cir.1983). Nevertheless, the existence of an earlier negative X-ray provides a basis for the Secretary to hold that later positive ones do not establish the existence of pneumoconiosis as a matter of law, and permits the Secretary to require that positive X-rays be re-read serially. Couch v. Secretary of Health and Human Services, 774 F.2d 163, 167-68 (6th Cir.1985). In this situation the Secretary may not deny benefits solely on the basis that the earlier negative X-ray creates a conflict. Only when a serial re-reading of the positive X-rays produces a later negative reading by a qualified reader may the Secretary find a conflict. It is the later negative reading that discloses the conflict and provides substantial evidence for a denial of benefits. As the decisions discussed herein demonstrate, this court has rejected the plurality view of the Fourth Circuit in Stapleton v. Westmoreland Coal Co.
 
 
 18
 Back, 796 F.2d at 172; accord Lykins v. Director, OWCP, 819 F.2d 146, 147 (6th Cir.1987).
 
 
 19
 We are bound by the applicable law set out in Back, and conclude that the ALJ properly weighed the conflicting x-ray evidence. The first x-ray was read as negative, thus, later x-rays read as positive were properly reread. Id. The five negative rereadings (by certified readers) of the March 11, 1980, x-ray read as positive by an uncertified reader, plus the negative rereading (by a certified reader) of the April 22, 1980, x-ray read as positive by an uncertified reader lends substantial evidence to support the ALJ's conclusion.[3]
 
 IV.
 
 20
 Prater also argues that the ALJ erred as a matter of law by not invoking the interim presumption under subsections 727.203(a)(2) or (a)(3), which provide that if values derived from ventilatory studies or arterial blood gas studies "are equal to or less than the values specified" in the tables, then the miner is presumed to be disabled. See 20 C.F.R. Sec. 727.203(a)(2), (3) (1987). Claimant asserts that the values produced in Dr. Varney's pulmonary function studies conducted on April 22, 1980, and Dr. Jarboe's blood gas tests conducted on February 29, 1980, qualify and, as a matter of law, the presumption must be invoked.
 
 A.
 
 21
 Dr. Varney reported the following ventilatory study values--VC: Predicted-454cc, observed-2700cc; FEV1 : Predicted-3320cc, observed-2000cc; MVV: Predicted-141 L/min, observed-30 L/min. These values were based upon "good" cooperation and "maximal" effort. However, they are not expressed in measurements specified in the table at 20 C.F.R. Sec. 727.203(a)(2). The ALJ listed Dr. Varney's values nonetheless as qualifying under the table.
 
 
 22
 The ALJ credited Dr. Varney's values with little weight, though, because another expert, Dr. O'Neill, said they were invalid due to inadequate effort. Dr. O'Neill's report stated that an analysis of the April 22, 1980, spirometry study shows "inconstant expiratory flow and variability between the curves in excess of 5%", and "inadequate volume increase." He concluded: "Invalid study due to inadequate effort."Section 727.206 clearly requires valid studies: "No ... ventilatory study or blood gas study which does not or did not meet the quality standards applicable at the time the evidence was submitted shall be considered sufficient to invoke the interim presumption provided in Sec. 727.203(a)...." 20 C.F.R. Sec. 727.206(a) (1987). Section 727.203(c) provides that Part 718 provisions are applicable to Sec. 727.203(a) studies. Section 718.103(b) provides, in part: "All pulmonary function test results submitted in connection with a claim for benefits shall be accompanied by three tracings of each test performed, unless the results of two tracings of the MVV [Maximum Voluntary Ventilation] are within 5% of each other, in which case two tracings for that test shall be sufficient." 20 C.F.R. Sec. 718.103(b) (1987). And subsection 718.103(c) states that "[n]o results of pulmonary function tests shall constitute evidence of a respiratory or pulmonary impairment unless such tests are conducted and reported in substantial compliance with this section and Appendix B." 20 C.F.R. Sec. 718.103(c) (1987). Appendix B provides: "[i]f it is established that one or more standards have not been met, the claims adjudicator may consider such fact in determining the evidentiary weight to be given to the results of the ventilatory function tests." 20 C.F.R. Sec. 718, App. B., at 683 (1987). The Appendix goes on to state that the claimant's effort on the MVV "shall be judged unacceptable when the patient: ... (D) Has an excessive variability between the three acceptable curves. The variation between the two largest MVV's of the three satisfactory tracings shall not exceed 10 percent." 20 C.F.R. Sec. 718, App. B, at 685 (1987) (emphasis added). The claimant's FEV1 (forced expiratory volume in one second) effort "shall be judged unacceptable when the patient: ... (G) Has an excessive variability between the three acceptable curves. The variation between the two largest FEV1 's ... should not exceed 5 percent of the largest FEV1 or 100 ml, whichever is greater." 20 C.F.R. Sec. 718, App. B, at 685 (1987) (emphasis added).
 
 
 23
 According to Dr. O'Neill's uncontradicted analysis of Dr. Varney's study curves, the FEV1 values exceeded the maximum allowable variability, and the MVV curve variation may have been excessive also. Consequently, the ALJ had substantial evidence to discredit the "qualifying" values and properly refused to invoke the Sec. 727.203(a)(2) presumption under the applicable regulations.
 
 B.
 
 24
 The next issue is whether Dr. Jarboe's blood gas study values invoked the Sec. 727.203(a)(3) presumption. Dr. Jarboe reported at rest values of: PCO2 , 32.6; PO2 66.1. The ALJ compared these values with those from two other studies, one conducted four days before, the other conducted seven months earlier.[4] He said:
 
 
 25
 Only the Claimant's February 29, 1980, test results were qualifying under the regulations. While it is the most recent test in the record, it was performed only four days after Dr. O'Neill's test which produced non-qualifying results. Also, the Claimant's July 11, 1979, resting and after-exercise test results were non-qualifying. Therefore, I find the weight of the evidence indicates that the interim presumption should not be invoked under Subsection (a)(3).
 
 
 26
 Dr. Jarboe's results meet the Sec. 727.203(a)(3) table requirements; the other two clearly do not. Nothing in the record suggests that the values of any of the three studies are invalid or that they were improperly determined as required by 20 C.F.R. Sec. 718.105 (1987). The question is, therefore, whether a single qualifying blood gas study is sufficient to invoke the presumption in spite of two previous non-qualifying studies, one of which was taken substantially contemporaneously with the qualifying study.
 
 
 27
 We have infrequently addressed the question of when the interim presumption should be invoked under Sec. 727.203(a)(3). See Ratliff v. Benefits Review Board, 816 F.2d 1121, 1122 (6th Cir.1987); Engle v. Director, OWCP, 792 F.2d 63, 64 n. 1 (6th Cir.1986); Moseley v. Peabody Coal Co., 769 F.2d 357, 361 (6th Cir.1985); Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 487 (6th Cir.1985). A single qualifying blood case study, uncontradicted by any non-qualifying studies, and supported by medical testimony as to pneumoconiosis may be sufficient to invoke the presumption. Ratliff, 816 F.2d at 1122.[5]
 
 
 28
 The ALJ's determination should be guided by an analysis similar to that which is employed in invoking the presumption under Sec. 727.203(a)(1) (concerning x-ray evidence). Cf. Engle, 792 F.2d at 64 n. 1 ("Here, various X-ray tests produced a mix of positive and negative interpretations, as did ventilatory function and arterial blood gas studies. The ALJ appears to have weighed these conflicting results carefully, and his decision is supported by substantial evidence."). We do not read our decision in Ramey, 755 F.2d at 487, to be contrary. In Ramey, the court did not address the quantum of evidence necessary to invoke the presumption, nor did the court discuss whether a substantially contemporaneous non-qualifying study constituted sufficient evidence to cause a conflict in the evidence. Instead, the court merely noted that the first blood gas study results, which qualified under the regulations, produced values "sufficient to invoke the presumption." Ramey, 755 F.2d at 487. The court did not declare that the first, qualifying study (later contradicted by other non-qualifying studies) actually established the presumption; rather, that evidence together with qualifying x-ray evidence established the presumption. Id. at 487-88. The Ramey court focused upon and concluded that the interim presumption, invoked by the ALJ, had been rebutted; it neither focused upon nor decided how the presumption had been established.
 
 
 29
 We have in dictum recognized that where there are conflicting ventilatory and blood gas study results, the decision may be left to the ALJ to determine whether to invoke the presumption. Moseley, 769 F.2d at 360-61; Engle, 792 F.2d at 64 n. 1. When there are conflicting arterial blood gas study results, it is incumbent upon the claimant to establish "by a preponderance of the evidence all the facts necessary to invoke the interim presumption of 20 C.F.R. Sec. 727.203(a)." Engle, 792 F.2d at 64. n. 1. The ALJ is to evaluate the conflicting evidence and determine whether to invoke the presumption; our function is to evaluate that decision and ascertain whether it is supported by substantial evidence. E.g., id.; cf. Lawson v. Secretary, 688 F.2d 436, 438 (6th Cir.1982) ("When X-ray evidence is in conflict, it is for the Secretary to weigh the evidence to determine whether the X-rays establish pneumoconiosis. Hill v. Califano, 592 F.2d 341 (6th Cir.1979)."). See Moseley, 769 F.2d at 360-61.
 
 
 30
 Here we are confronted with conflicting blood gas study evidence. The ALJ considered the evidence and chose not to invoke the presumption. We hold that this decision is supported by substantial evidence because there were two non-qualifying blood gas studies in the record, and the qualifying study was preceded only days before by a study producing clearly non-qualifying values.VI.
 
 
 31
 Since substantial evidence supports the Secretary's decision not to invoke the interim presumption, we hold that claimant is not entitled to benefits. We need not address the rebuttal questions involved. The Secretary's decision denying benefits is AFFIRMED.
 
 
 
 [1]
 Couch held that "[a] negative reading of an x-ray cannot rebut the presumption created by a prior positive reading of the same x-ray." Couch, 774 F.2d at 166 (citation omitted). However, the court went on to say that, "[a]ccordingly, if the presumption had arisen in this case the Secretary was not permitted to have the positive x-rays reread. However, if substantial evidence existed for the Secretary to conclude that the presumption had not been invoked, then the rereadings were not barred." Id. (emphasis added) (footnote omitted)
 
 
 [2]
 A subsidiary issue, not disputed by the parties, is whether case law governing Part B claims are applicable to Part C claims. Part B claims are "federally financed and administered by the Social Security Administration (SSA)". Part C is administered by the Department of Labor, but "benefits awarded ... are paid by a responsible mine operator." Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 489 (6th Cir.1985). Part B claims are those filed before July 1, 1973, and Part C claims are those filed after December 31, 1973. Youghiogheny & Ohio Coal Co. v. Baker, 815 F.2d 422, 423 n. 1 (6th Cir.1987). We note that Part B cases are not applicable to Part C claims with respect to rebuttal of the interim presumption once it is properly established. Ramey, 755 F.2d at 490. However, with respect to whether the interim presumption has been invoked, Part B and Part C are not dissimilar and Part B cases may be applicable to Part C claims. See Back v. Director, OWCP, 796 F.2d 169, 171 (6th Cir.1986) ("As a practical matter, if evidence is sufficient to trigger the presumption ... under 20 C.F.R. Sec. 410.490, it will have the same effect under Sec. 727.203.")
 
 
 [3]
 We are aware that the Supreme Court has granted certiorari in Stapleton v. Westmoreland Coal Co., 785 F.2d 424 (4th Cir.1986), under the style, Mullins Coal Co. v. Director, cert. granted, --- U.S. ----, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987)
 
 
 [4]
 The three studies produced the following values:
 Date Exhibit Physician PCO sub2 PO sub2 Qualify
7/11/79 DX 13 S. Akhtar 32 77 (resting) No
 30 90 (after exercise)
2/25/80 DX 23 R. O'Neill 40 82 No
2/29/80 DX 22 T. Jarboe 32.6 66.1 (resting) Yes
 
 
 [5]
 Prater's position with respect to a single qualifying blood case study is similar to the Fourth Circuit's rule that any one qualifying blood gas study invokes the Sec. 727.203(a)(3) presumption. Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 426 (4th Cir.1986) (en banc), cert. granted sub nom., Mullins Coal Co. v. Director, OWCP, --- U.S. ----, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987). In the context of determining whether a single positive reading of an x-ray invokes the presumption under Sec. 727.203(a)(1), this court has declined to follow the Stapleton rule. See Back, 796 F.2d at 172. In the context of invoking the presumption under Sec. 727.203(a)(3), we believe that a similar result is indicated