**Walter WILEY, Petitioner,**

v.

**CONSOLIDATION COAL COMPANY, Respondent,**

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Parties–In–Interest.**

No. 89–3090.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 28, 1989.

Decided Dec. 28, 1989.

Edmund A. Sargus, Jr. (argued), St. Clairsville, Ohio, for petitioner.

Douglas A. Smoot (argued), Jackson, Kelly, Holt & O'Farrell, Charleston, W.V., for respondent.

Barbara J. Johnson, Donald S. Shire, Associate Sol., Paul Frieden, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for parties-in-interest.

Before MERRITT, Chief Judge, RYAN, Circuit Judge, and PECK, Senior Circuit Judge.

MERRITT, Chief Judge.

Walter Wiley challenges the decision of the ALJ, affirmed by the Benefits Review Board (BRB) denying him benefits pursuant to the Black Lung Benefits Act of 1969, as amended, 30 U.S.C. § 901, *et seq.* Specifically, Wiley claims that the ALJ improperly failed to invoke the interim presumption provided for in 20 C.F.R. § 727.203(a)(2) and (4). To invoke the interim presumption of disability under § 727.203(a)(2), a pulmonary function study must be both qualifying and conforming. The critical evidence presented in this case consisted of four pulmonary function studies. All four of these studies were qualifying because they produced values less than the MVV and FEV[1] values provided for in 20 C.F.R. § 727.203(a)(2). Two of the studies clearly were nonconforming because they failed to meet the requisite quality standards set forth in 20 C.F.R. § 410.430.[1] The issue presented in this appeal is whether the ALJ can find the two remaining studies to be nonconforming by basing his decision on the opinion of nonexamining physicians who used criteria outside those set forth in § 410.430 in forming their opinions. The BRB affirmed the ALJ's decision not to invoke the interim presumption and to deny benefits to Wiley. We hold that the ALJ's refusal to invoke the interim presumption was improper as a matter of law. Therefore, we reverse the decision of the BRB and remand to the ALJ, requiring him to invoke the interim presumption pursuant to § 727.203(a)(2) and to hear rebuttal argument pursuant to § 727.203(b).

## I. *FACTS*

Wiley was employed in the coal mining industry from 1934–1977, with over seventeen years of employment with Consolidation Coal. Despite his plan to retire at age 65, Wiley retired at age 62 because of shortness of breath and coughing spells. A significant amount of medical evidence was presented in this case. The evidence relevant to this appeal is consolidated and reproduced below.

---

**1.** One of these nonconforming studies failed to contain the required tracings, while the other study was invalidated by the examining physician because Wiley failed to exert good effort.

*7/15/74 TEST DATE*
  *PHYSICIAN:* Crumlel
  *RESULT:* $FEV^1 = 2.48$;  $MVV = 62$
  *HEIGHT:* 72″
  *EFFORT and COOPERATION:* not noted
  *TRACINGS:* not noted
*10/25/77 TEST DATE*
  *PHYSICIAN:* Eicher
  *RESULT:* $FEV^1 = 1.9$;  $MVV = 50$
  *HEIGHT:* 72″
  *EFFORT and COOPERATION:* Good
  *TRACINGS:* Included
  *VALIDATION:*    Landry–$FEV^1 = 2.2$; $MVV = 50$ Zaldivar–Test invalid
*11/4/80 TEST DATE*
  *PHYSICIAN:* Kress
  *RESULT:* $FEV^1 = 2.3$;  $MVV = 27.5$
  *HEIGHT:* 70″
  *EFFORT and COOPERATION:* Effort on MVV "not good"
  *TRACINGS:* Included
*3/11/81 TEST DATE*
  *PHYSICIAN:* DelVecchio
  *RESULT:* $FEV^1 = 2.48$;  $MVV = 46$
  *HEIGHT:* 70.5″
  *EFFORT and COOPERATION:* Good
  *TRACINGS:* Included
  *VALIDATION:* KRESS-two $FEV^1$ and all MVV tracings show irregularities sufficient to invalidate the test

Section 727.203(a)(2) establishes disability values based on the height of a particular coal miner. A miner who works for more than ten years in qualified coal mine employment is entitled to an interim presumption of total disability due to pneumoconiosis acquired in the course of coal mine employment if the medical evidence falls within the established categories. The maximum levels established for a miner of 70 inches, Wiley's height, are a $FEV^1$ (forced expiratory volume) of 2.5 and a MVV (maximum voluntary ventilation) of 100.

Based on the evidence presented, the ALJ determined that Wiley was not entitled to the benefit of the interim presumption set forth in § 727.203(a)(2) and (4). The ALJ then decided that Wiley was not eligible to receive federal black lung disability benefits. This decision was affirmed by the BRB.

On appeal, Wiley raises two interrelated claims. He challenges the BRB's decision affirming the ALJ's denial of benefits, claiming that the decision was not supported by substantial evidence and was contrary to law. Specifically, Wiley challenges the failure of the BRB to invoke the interim presumption pursuant to 20 C.F.R. § 727.203(a)(2) and (4), as he suggests is mandated by *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987).

## II.  *STANDARD OF REVIEW*

The BRB is authorized to review the decision of an ALJ to determine whether that decision is supported by "substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3). The regulatory counterpart to this statute, ·20 C.F.R. § 802.301 provides that:

> The Benefits Review Board is not empowered to engage in a de novo proceeding or unrestricted review of a case brought before it. The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record considered as a whole or in accordance with law.

*See generally, Director, OWCP v. Eastern Coal Corp.*, 561 F.2d 632 (6th Cir.1977). While the BRB may reverse or remand an ALJ's decision that is contrary to law or not supported by substantial evidence, the BRB may not make its own findings of fact or substitute its own judgment in the weighing of conflicting evidence. *Sun Shipbuilding & Dry Dock Co. v. McCabe*, 593 F.2d 234 (3rd Cir.1979). Similarly, this Court should not reweigh the evidence in exercising its appellate authority. Rather, this Court must determine whether there is substantial evidence from the record as a whole to support the findings of the ALJ.

*See South Chicago Coal & Dock Co. v. Bassett,* 104 F.2d 522 (7th Cir.1939), *aff'd,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940).

## III. *INVOCATION OF THE INTERIM PRESUMPTION PURSUANT TO 20 C.F.R. § 727.203(a)(2)*

Wiley contends that the ALJ was required to invoke the interim presumption contained in 20 C.F.R. § 727.203(a)(2) based on the four ventilatory studies presented in this case. Specifically, Wiley argues that when all the ventilatory studies are qualifying (i.e. produce results below the values contained in the chart provided in that section as determined by height) and when at least one study is conforming to the quality standards set forth in 20 C.F.R. § 410.430, then the interim presumption must be invoked as a matter of law.

Section 727.203 provides:

(a) *Establishing interim presumption.* A miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if one of the following medical requirements is met:

.  .  .  .  .

(2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease (which meets the requirements for duration in § 410.412(a)(2) of this title) as demonstrated by values which are equal to or less than the values specified in the following table. . . .

For a miner of 70 inches in height, the table provides a maximum FEV[1] of 2.5 and a maximum MVV of 100. In order to invoke the presumption under (a)(2), however, a miner must produce a ventilatory study which is both qualifying and conforming. A qualifying study is one which produces values equal to or less than the FEV[1] and MVV provided for in 20 C.F.R. § 727.203(a)(2). A conforming study is one which meets the quality standards set forth in 20 C.F.R. § 410.430 which provides:

Spirometric tests to measure ventilatory function must be expressed in liters or liters per minute. The reported maximum voluntary ventilation (MVV) or maximum breathing capacity (MBC) and 1–second forced expiratory volume (FEV[1]) should represent the largest of at least three attempts. The MVV or the MBC reported should represent the observed value and should not be calculated from FEV[1]. The three appropriately labeled spirometric tracings, showing distance per second on the abscissa and the distance per liter on the ordinate, must be incorporated in the file. The paper speed to record the FEV[1] should be at least 20 millimeters (mm.) per second. The height of the individual must be recorded. Studies should not be performed during or soon after an acute respiratory illness. If wheezing is present on auscultation of the chest, studies must be performed following administration of nebulized bronchodilator unless use of the later is contraindicated. A statement shall be made as to the individual's ability to understand the directions, and cooperate in performing the tests. If the tests cannot be completed the reason for such failure should be explained.

■■■ The ALJ found that the four ventilatory studies presented in this case failed to meet the quality standards established in § 410.430. The test on 7/15/84 by Dr. Crumlel failed to contain the required tracings. The test on 11/4/80 was invalidated by Dr. Kress because Wiley failed to exert proper effort. He did not achieve maximum voluntary ventilation. Because these two tests were non-conforming, the ALJ properly refused to consider them in invoking the interim presumption. *See generally, Lese v. Bethlehem Mines Corp.,* 7 BLR 1–149, (1984); *Strako v. Ziegler Coal Co.,* 3 BLR 1–136 (1981). These two nonconforming tests, however, do not discredit any other potentially qualifying studies. They merely are unreliable to invoke the interim presumption.

Two additional ventilatory studies were presented in this case: one performed on 10/25/77 by Dr. Eicher and one performed

on 3/11/81 by Dr. DelVecchio. While both studies produced qualifying values within the range provided in 20 C.F.R. § 727.203(a)(2), the ALJ found that the studies failed to meet the quality standards required by § 410.430. The ALJ's determination was based on the opinions of Drs. Zaldivar and Kress which discredited the objective studies performed by Drs. Eicher and DelVecchio. Dr. Zaldivar, reviewing the tracings from Dr. Eicher's study, invalidated this test on two grounds. First, he determined that three valid FEV[1] tracings had not been produced. Second, he believed that the FEV[1] was not an accurate reflection of the best of three valid efforts as required by § 410.430. Despite the fact that a second reviewer, Dr. Landry, found Dr. Eicher's test to be completely proper and in conformity with the requirements of § 410.430, the ALJ accorded Dr. Zaldivar's opinion greater weight in concluding that the 10/25/77 test was nonconforming.

Similarly, Dr. Kress invalidated the ventilatory study performed by Dr. DelVecchio. He reported that graph tracings on two of the FEV[1] tests and all the MVV tests reflected irregularities and the absence of smooth curves which a valid test should produce. The ALJ also gave Dr. Kress' report greater weight than Dr. DelVecchio's in concluding that this 3/11/81 test was nonconforming.

Concluding that none of the ventilatory studies were conforming, the ALJ determined that these studies could not be used to invoke the interim presumption pursuant to § 727.203(a)(2). Wiley objects to the failure of the ALJ to invoke the interim presumption, claiming that a literal application of § 727.203(a)(2) and § 410.430 to the ventilatory studies in this case result in two qualifying and conforming tests and two qualifying and nonconforming tests. Based on these tests, Wiley argues that he has established one of the qualifying factors by a preponderance of the evidence and, therefore, that *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987), mandates the invocation of an interim presumption as a matter of law. We agree.

The first question is the propriety of having a nonexamining physician report as to a previously performed ventilatory study. The BRB has recognized that the opinion of a consulting or reviewing physician concerning the reliability of a pulmonary function study may constitute substantial evidence for the rejection of qualifying studies. *See Clayton v. Pyro Mining Co.*, 7 BLR 1–551 (1984); *Bolyard v. Peabody Coal Co.*, 6 BLR 1–767 (1984).

Consolidation Coal argues that Drs. Zaldivar and Kress were not required to limit their objections to the ventilatory studies, nor to conform their opinions to the quality standards set forth in § 410.430, citing *Clayton, supra,* to support this proposition. In *Clayton,* the single pulmonary function study which was both qualifying and conforming was invalidated by a reviewing physician's report that a 5% variation between tracings precluded a valid finding of conformity. *Id.* The ALJ, on this basis, refused to invoke an interim presumption despite the lack of any nonqualifying study.

Consolidation Coal's argument, however, is misleading because regulations issued by the Department of Labor in 1980 *do* contain requirements that the variation among the three tracing results should not exceed 5%. This requirement, found in 20 C.F.R. § 718.103, likely did apply to a finding of conformity in *Clayton,* which was decided in 1984. The court in *Sgro v. Rochester & Pittsburgh Coal Co.*, 4 BLR 1–370, 374–75 (1981), however, held that the 5% requirement should not be applied retroactively to tests performed prior to the effective date of § 718.103. Thus, the persuasiveness of *Clayton* as it impacts on the present case is undermined by the passage of this new regulation which authorizes consideration of a 5% variation in tracing results.

█ Thus, the narrow question is to what extent apparently qualifying and conforming pulmonary function tests may be invalidated by reports of nonexamining physicians whose opinions are based on criteria outside those set forth in 20 C.F.R. § 410.430. In addressing this issue, it is important to consider the policy behind the

enactment of the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* This law was enacted in order to facilitate and liberalize the flow of compensation to miners who acquire pneumoconiosis as a result of working in coal mines, *Director, OWCP v. Black Diamond Coal Mining Co.,* 598 F.2d 945 (5th Cir.1979); *Republic Steel Corp. v. United States Dept. of Labor,* 590 F.2d 77 (3d Cir.1978). Regulations providing for the invocation of an interim presumption of pneumoconiosis advance this policy. Section 410.430 sets forth specific criteria to be considered in making a determination as to the interim presumption under § 727.203(a)(2).

■ Wiley produced two pulmonary function studies which met the standards set forth in § 727.203(a)(2) and § 410.430. The ALJ, however, refused to invoke the interim presumption, relying on the opinions of nonexamining physicians who discredited the reliability of the pulmonary function studies based on factors outside those listed in § 410.430. In so doing, the ALJ made the interim presumption a nullity. Under § 727.203(a)(2), the interim presumption should be invoked upon a proper showing. This presumption, however, may be rebutted under § 727.203(b) upon a showing of the unreliability of the medical evidence presented. By considering the opinions of nonexamining physicians which were based on factors outside § 410.430, the ALJ allowed the negation of the interim presumption before it was ever invoked. This approach was improper. Upon a showing of qualifying and conforming pulmonary function studies pursuant to § 727.203(a)(2) and § 410.430, and in the absence of any nonqualifying, conforming studies, the ALJ must invoke the interim presumption of pneumoconiosis as a matter of law. Opinions and other evidence tending to discredit these otherwise qualifying and conforming pulmonary function studies which rely on factors outside those set forth in § 410.430 only may be considered in conjunction with a rebuttal of

the interim presumption pursuant to § 727.203(b).

Because we find that the ALJ should have invoked the interim presumption pursuant to § 727.203(a)(2), we need not consider whether the ALJ properly refused to invoke the interim presumption under § 727.203(a)(4).

Accordingly, we reverse the BRB's denial of black lung benefits to Wiley and remand this case to the ALJ who is required to invoke the interim presumption and hear rebuttal argument in conjunction with § 727.203(b).