Walter WILEY, Petitioner,

v.

CONSOLIDATION COAL
COMPANY, Respondent,

Director, Office of Workers' Compensation Programs, United States Department of Labor, Parties–In–Interest.

No. 89–3090.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 28, 1989.

Decided Oct. 10, 1990.

Edmund A. Sargus, Jr. (argued), Burech & Sargus, St. Clairsville, Ohio, for petitioner.

Douglas A. Smoot (argued), Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., Barbara J. Johnson, Donald S. Shire, As-

---

soc. Sol., Paul Frieden, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent.

Before MERRITT, Chief Judge, RYAN, Circuit Judge, and PECK, Senior Circuit Judge.

MERRITT, Chief Judge.

Our decision in this difficult black lung benefits case, decided and filed December 28, 1989, reversed the decision of the Benefits Review Board (BRB) and remanded the case with instructions to invoke the interim presumption pursuant to 20 C.F.R. § 727.203(a)(2) and to hear rebuttal argument pursuant to 20 C.F.R. § 727.203(b). Consolidation Coal Co. (Consolidation Coal) filed a Petition for Rehearing on January 10, 1990, in which it made several assignments of error. After considering Consolidation Coal's Petition, as well as responses by Petitioner Wiley and the Director, we adhere to our original decision in this case with one modification. We recognize that 20 C.F.R. § 718.103 standards should apply to Part 727 claims generally, and specifically to pulmonary function studies conducted after March 31, 1980, the effective date of the regulation. Accordingly, section 718.-103 regulations should apply to the pulmonary function test performed on March 11, 1981, but should not apply to the test performed on October 15, 1977. However, we maintain our prior position that "[u]pon a showing of a qualifying and conforming pulmonary function study pursuant to § 727.203(a)(2) and § 410.430 [and § 718.103], and in the absence of any nonqualifying, conforming studies, the ALJ must invoke the interim presumption of pneumoconiosis as a matter of law" and that "opinions and other evidence tending to discredit this otherwise qualifying and conforming pulmonary function study which rely on factors outside those set forth in § 410.430 [or § 718.103] only may be considered in conjunction with a rebuttal of the interim presumption pursuant to § 727.203(b)." *Wiley v. Consolidation Coal Co.*, 892 F.2d 498, 503 (6th Cir.1989).

This black lung case raises some complicated issues. In an effort to clarify the positions of the parties and our prior opinion, and in order ultimately to rule on Consolidation Coal's Petition for Rehearing, we review the holding and reasoning of our original opinion before addressing the issues raised in Consolidation Coal's Petition.

## I. Our December 28, 1989 Opinion in This Case

### A. *General Disposition*

This case, originally heard on September 28, 1989, involved a challenge by Walter Wiley of the ALJ's decision, affirmed by the BRB, denying him benefits. Specifically, Wiley claimed that the ALJ improperly failed to invoke the interim presumption provided for in 20 C.F.R. §§ 727.203(a)(2) and (4). To invoke the interim presumption of disability under § 727.203(a)(2), a pulmonary function study must be both "qualifying" and "conforming." Of the four pulmonary function studies presented in this case, all four were "qualifying" because they produced values less than the MVV and FEV[1] values provided for in 20 C.F.R. § 727.203(a)(2). Two of these studies clearly were "nonconforming" because they failed to meet the requisite quality standards set forth in 20 C.F.R. § 410.430.

We characterized the issue on appeal as whether the ALJ can find the remaining two studies to be nonconforming by basing his decision on the opinion of nonexamining physicians who used criteria outside those set forth in § 410.430 in forming their opinions. The BRB affirmed the ALJ's decision not to invoke the interim presumption and to deny benefits. We held that the refusal to invoke the interim presumption was improper as a matter of law. Therefore, we reversed the decision of the BRB and remanded to the ALJ with instructions to invoke the interim presumption pursuant to § 727.203(a)(2) and to hear rebuttal argument pursuant to § 727.203(b).

### B. *Analysis*

Wiley argued that when all four ventilatory studies are qualifying (i.e. produce results below the values contained in the chart provided in 20 C.F.R. § 727.203(a)(2)

as determined by height) and when at least one study is conforming to the quality standards set forth in 20 C.F.R. § 410.430, then the interim presumption must be invoked as a matter of law. The ALJ, however, found that the four ventilatory studies failed to meet the quality standards set forth in § 410.430.

Two tests, the ones performed on 7/15/74 and 11/4/80, clearly failed to meet the enumerated quality standards set forth in § 410.430.[1] Although we noted that the ALJ was correct in not considering them in invoking the interim presumption, we also recognized that nonconforming tests do not discredit other potentially qualifying studies. The two other ventilatory studies are particularly at issue in this case: one performed on 10/25/77 by Dr. Eicher and one performed on 3/11/81 by Dr. DelVecchio. Although both studies produced qualifying values under § 727.203(a)(2), the ALJ found that the studies failed to meet the quality standard required by § 410.430. This determination was based on the opinions of Drs. Zaldivar and Kress which discredited the objective studies performed by Drs. Eicher and DelVecchio. Dr. Zaldivar, reviewing the tracings from Dr. Eicher's study, invalidated this test on two grounds. First, he, in his opinion, determined that three valid FEV tracings had not been produced. Second, he believed, on the basis of his experience, that the FEV was not an accurate reflection of the best of three valid efforts as required by § 410.430. Despite the fact that a second reviewer, Dr. Landry, found Dr. Eicher's test to be completely proper and in conformity with the requirements of § 410.430, the ALJ accorded Dr. Zaldivar's opinion greater weight in concluding that the 10/25/77 test was nonconforming.

Similarly, Dr. Kress invalidated the ventilatory study performed by Dr. DelVecchio. He reported that graph tracings on two of the FEV[1] tests and all the MVV tests reflected irregularities and the absence of smooth curves which, in his opinion, a valid test should produce. The ALJ also gave Dr. Kress' report greater weight than Dr. DelVecchio's in concluding that this 3/11/81 test was nonconforming.

After noting that a nonexamining physician's opinion concerning the reliability of a pulmonary function study may constitute substantial evidence for the rejection of qualifying studies, we rejected Consolidation Coal's argument that Drs. Zaldivar and Kress were not required to conform their opinion to the quality standards set forth in § 410.430, citing *Clayton v. Pryo Mining Co*, 7 BLR 1-551 (1984). Specifically, we noted that the single pulmonary function study in *Clayton* although qualifying and conforming, was invalidated by a reviewing physician's report that a 5% variation between tracings precluded a finding of conformity. Regulations issued in 1980 by the Department of Labor, however, contain requirements that the variation among the three tracings should not exceed 5%. *See* 20 C.F.R. § 718.103. We recognized *Sgro v. Rochester & Pittsburgh Coal Co.*, 4 BLR 1-370, 374-75 (1981), as support for the proposition that the 5% requirement should not be applied retroactively to tests performed prior to the effective date of § 718.103.[2]

Our Court went on to address the narrow question of to what extent apparently qualifying and conforming pulmonary function tests may be invalidated by reports of nonexamining physicians whose opinions are based on criteria outside those set forth in 20 C.F.R. § 410.430. Recognizing the policy of liberal benefits which underlies the Black Lung Benefits Act, we held that it was improper for the ALJ to consider the opinions of nonexamining physicians who relied on factors outside § 410.430 in refusing to invoke the interim presumption. Specifically, we held that:

Upon showing of qualifying and conforming pulmonary function studies pursuant to § 727.203(a)(2) and § 410.430,

---

1. The 7/15/74 test failed to contain the required tracings. The 11/4/80 test was invalidated by Dr. Kress because Wiley failed to exert proper effort.

2. We improperly concluded, however, that § 718.103 should not apply to the pulmonary function study performed on 3/11/81, after the effective date of § 718.103.

and in the absence of any non-qualifying, conforming studies, the ALJ must invoke the interim presumption of pneumoconiosis as a matter of law. Opinions and other medical evidence tending to discredit these otherwise qualifying and conforming pulmonary function studies which rely on factors outside those set forth in § 410.430 only may be considered in conjunction with a rebuttal of the interim presumption pursuant to § 727.203(b).

*Wiley,* 892 F.2d at 503. Based on this reasoning, our Court reversed the decision of the BRB to deny benefits and remanded the case to the ALJ, requiring him to invoke the interim presumption and to hear rebuttal argument in conjunction with § 727.203(b). *Id.*

## II. Consolidation Coal's Petition for Rehearing

### A. *Applicability of Part 718 Standards*

█ Consolidation Coal read our opinion as stating that § 718.103 did not apply to this claim because § 718 was not in effect until March 31, 1980. Consolidation Coal argues that this holding is directly contrary to the Sixth Circuit's holding in *Prater v. Hite Preparation Co,* 829 F.2d 1363 (6th Cir.1987). Consolidation Coal reads *Prater* as holding that 20 C.F.R. § 718.103 applies to Part 727 claims when the medical evidence is *submitted after* March 31, 1980, the effective date of the regulations.

Consolidation Coal also reads our opinion as specifically rejecting the application of § 718.103 requirements to the invocation of the interim presumption pursuant to Part 727. We cited *Sgro v. Rochester & Pittsburgh Coal Co,* 4 BLR 1–370, 374–75 (1981), for the proposition that the Part 718 regulations codified at 20 C.F.R. § 718.103 do not apply retroactively to the Part 727 interim presumption. We failed to recognize that Part 718 regulations would apply to pulmonary function studies performed after March 31, 1980, the effective date of Part 718. Consolidation Coal argues that *Prater* holds that the key factor is not when the test was performed but rather when the test results were submitted into

evidence. In other words, Part 718 quality standards should be applied to all evidence submitted into evidence after March 31, 1980, including the prohibition on a greater than 5% variation in test results. Consolidation Coal charges that the *Wiley* decision is incorrect in that it held that only the § 410.430 quality standards apply in a Part 727 claim. In *Wiley,* the two pulmonary function studies, performed on 10/15/77 and 3/11/81, were submitted into evidence at the formal hearing on May 16, 1985, more than five years after the effective date of the Part 718 regulations.

The specific regulatory language at issue is as follows:

727.206 Quality standard applicable to evidence.

(a) No ... ventilatory study which does not or did not meet the quality standards applicable at the time the evidence was submitted shall be considered sufficient to invoke the interim presumption provided in § 727.203(a) of this part. With respect to evidence submitted prior to the effective date of Part 718 of this title, the standards to be applied in the evaluation of evidence are contained in Subpart D of Part 410 of this title. Evidence submitted after the effective date of the revised Part 718 shall be evaluated as provided in that part.

Consolidation Coal charges that our Court erred, and gave an opinion contrary to another Sixth Circuit panel, when it allegedly held that only the quality standards set forth in § 410.430 apply to a Part 727 claim.

Wiley agrees, as a general proposition, that March 31, 1980, is the operative date for determining whether the quality standards set forth in Part 718 are applicable in a case filed under Part 727. Wiley argues, however, that the *filing* of the case determines whether or not the March 31, 1980 deadline has been met. Wiley bases his argument on language contained in 20 C.F.R. § 718.2, language not cited by the Court in *Prater,* which states:

This part is applicable to the adjudication of claims *filed* after March 31, 1980.... (Emphasis added.)

Based on this language, Wiley asserts that Part 718 regulations only apply to cases filed after March 31, 1980.

In addition, Wiley notes that the argument raised by Consolidation Coal was raised and rejected in *Sgro v. Rochester & Pittsburgh Coal Co*, 4 BLR 1–370 (1981). The *Sgro* court characterized the central proposition to the argument as one:

> that evidence *used in a hearing held after March 31, 1980*, the effective date of the new regulations, must satisfy these new, more technical requirements.

*Sgro*, 4 BLR at 1–372 (emphasis added). The court went on to reject this argument because:

> [n]o doctor, when *performing* a test prior to the promulgation of the new part 718, could possibly have known that he would have to state his compliance with those regulations in order to satisfy the Department of Labor's technical standards.... The applicable quality standards are those in effect at the time Part 727 became effective, i.e., those provided by Part 410.

*Sgro*, 4 BLR at 1–374, 375 (emphasis added). Thus, Wiley argues that, at the very least, a test should be measured by the quality standards in effect at the time the test was given. Wiley further suggests that *Sgro* actually stands for the proposition that Part 718 standards only should apply to a claim filed after the effective date of Part 718.

After reconsidering the *Sgro* and *Prater* holdings, we conclude that Part 718 standards should apply to pulmonary function tests *performed* after the effective date of the regulations—March 31, 1980. Thus, we modify our prior decision to the extent that we suggested that § 718.103 would not apply to the pulmonary function study performed on March 11, 1981. Because that test does not conform to the standards set forth in § 718.103, it cannot be used to invoke the interim presumption provided for in § 727.203(a)(2). Because it is a qualifying test, however, it cannot be used to discredit an otherwise qualifying and conforming test.

■ The pulmonary function study performed on October 15, 1977, is not subject to the quality standards provided for in § 718.103. Thus, this qualifying and conforming pulmonary function study is sufficient to require the invocation of the interim presumption of pneumoconiosis in the absence of any nonqualifying, conforming studies.

**B.** *The Invalidation of Qualifying and Conforming Test by Nonexamining Physicians Whose Opinions are Based on Criteria Outside Those Set Forth in § 410.430 and § 718.103*

■ Despite this modification of our original opinion as to the applicability of Part 718 standards, we maintain the thrust of our original holding. "Opinions and other medical evidence tending to discredit [this] otherwise qualifying and conforming pulmonary function stud[y] which rely on factors outside those set forth in § 410.430 [and § 718.103] only may be considered in conjunction with a rebuttal of the interim presumption pursuant to § 727.203(b)." *Wiley*, 892 F.2d at 503.

Consolidation Coal argues that our holding is "patently inconsistent" with the Supreme Court's holding in *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). Consolidation Coal reads *Mullins* as holding that the credibility of invocation evidence is to be resolved *prior to invocation*. Supporting its argument Consolidation Coal extracts language from the *Mullins* decision which, at first blush, might seem persuasive. The Supreme Court in *Mullins* states that "nothing in the regulation [section 727.203] requires all relevant medical evidence to be considered at the rebuttal phase; such evidence must simply be admissible at some point during the proof process." *Mullins*, 484 U.S. at 150, 108 S.Ct. at 435. The Court went on to note that the fact "that the 'all relevant medical evidence' requirement appears at the beginning of the rebuttal section ... does not indicate that the drafters intended a more limited evidentiary battle at the invocation stage." *Id.* at 150, 108 S.Ct. at 435. Thus, the Supreme Court found that an x-ray in isolation does

not necessarily *establish* the disease; "rather, the regulation must, at a minimum, have reference both to the X ray itself and to other evidence that sheds light on the meaning and significance of the X rays." *Id.* at 148, 108 S.Ct. at 434.

Despite this language, *Mullins* easily can be distinguished from the case at bar. The issue before the Court in *Mullins*, was whether a single piece of qualifying evidence (i.e. an x-ray) mandated the invocation of the interim presumption, despite other non-qualifying evidence. The Court held that § 727.203(a) requires that a claimant establish at least one of the qualifying facts by a preponderance of the evidence. *Id.* at 156–60, 108 S.Ct. at 438–41. In our case, all four ventilatory studies *were qualifying*—no conflicting, or nonqualifying, ventilatory studies were presented. The question is whether or not an apparently "conforming" study can be deemed "nonconforming" based on criteria outside those set forth in the regulations, either Part 410 or Part 718. With an x-ray, a doctor's interpretation is required to establish the presence of pneumoconiosis. Different doctors may interpret an x-ray differently. With a ventilatory study, the values set forth in § 727.203(a)(2) establish the presence of pneumoconiosis, provided the tests are performed in compliance with regulatory standards. In other words, the values indicate whether the tests "qualify"—the only question is whether the tests are "conforming." Applying the Part 718 quality standards, the 10/15/77 test would remain "conforming" even though the 3/11/81 test arguably would be "nonconforming."[3] Thus, the evidence consists of three qualifying, nonconforming pulmonary function studies and one qualifying, conforming pulmonary function study.

Section 727.203 clearly sets forth a two-step inquiry. Under § 727.203(a), a claimant is entitled to the invocation of an interim presumption of pneumoconiosis if he can prove, by a preponderance of evidence, one of the four qualifying factors set forth in the regulations. *Mullins*, 484 U.S. at 156–60, 108 S.Ct. at 438–41. Once the interim presumption is invoked, the employer may rebut the interim presumption by putting on evidence establishing a lack of pneumoconiosis. In this case, claimant Wiley introduced four pulmonary function studies, all of which were qualifying under the regulations set forth in § 727.203(a)(2). Although only one of the tests conformed to the quality standards set forth in § 410.430,[4] no nonqualifying, conforming tests were produced such to discredit the one qualifying and conforming test. Thus, Wiley is entitled to the invocation of the interim presumption because he produced, by a preponderance of evidence, a qualifying and conforming pulmonary function study. To allow opinions of nonexamining physicians whose opinions are based on criteria outside the applicable criteria set forth in § 410.430 and § 718.103 to discredit an otherwise conforming pulmonary function study at the invocation stage would be improper—the rebuttal stage set forth in § 727.203(b) would become meaningless. We do not read *Mullins* to mandate the elimination of the rebuttal stage of the two-step inquiry.

In addition, our decision is consistent with the remedial nature of the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* "This law was enacted in order to facilitate and liberalize the flow of compensation to miners who acquire pneumoconiosis as a result of working in coal mines." *Wiley*, 892 F.2d at 503 (citations omitted). If Wiley can make the requisite § 727.203(a) showing by a preponderance of the evidence, he is entitled to the receipt of benefits unless a lack of pneumoconiosis can be established. *See* 20 C.F.R. § 727.203(b)(4).

Consolidation Coal also cites a Seventh Circuit decision which it characterizes as "categorically rejecting" our holding on this very issue. In *Zeigler Coal Co. v. Sieberg*, 839 F.2d 1280 (7th Cir.1988), the

---

3. Assuming the ALJ gave greater weight to the opinion of Dr. Kress, then the 3/11/81 test would be nonconforming because Part 718 has a requirement mandating a less than 5% variation between tracings.

4. This test, performed on 10/15/77, was not subject to the quality standards contained in § 718.103.

Seventh Circuit appears to reject the argument that "qualifying results of a [pulmonary function] study, as a matter of law, would invoke a presumption of disability whenever the quality standards set forth at section 410.[4]30 of the regulations [are] met." *Id.* at 1282. This argument, according to the court, "makes the mere presence of the [three] tracings sufficient to invoke the presumption of disability, regardless of whether they clearly demonstrate the invalidity of the study." *Id.* at 1282–83. The court concluded that the fact "[t]hat a demonstrably invalid study should invoke a presumption merely because the required tracings which reveal that deficiency are present makes little sense." *Id.* at 1283.

*Sieberg* also can be easily distinguished from the case at bar. In *Sieberg,* the two relevant pulmonary function studies, accompanied by the requisite tracings, produced values that nonexamining physicians said were "physiologically impossible" despite the presence of the requisite tracings. *Id.* at 1284. In our case, Consolidation Coal does not contend that the test results are not qualifying. Rather, Consolidation Coal argues that the test results are invalid based on criteria outside those set forth in § 410.430.[5]

Accordingly, we modify our prior opinion as to the applicability of Part 718 standards. However, we maintain our prior holding insofar as it reversed the decision of the BRB and remanded the case to the ALJ with instructions to invoke the interim presumption pursuant to § 727.203(a)(2) and to hear rebuttal argument pursuant to § 727.203(b).

---

**5.** The alleged fault with the 10/15/77 test is that the tracings vary by greater than 5%, a requirement found in Part 718 but not Part 410. Part 718, however, does not apply to this test because the test was performed prior to the effective date of the regulations.