982 F.2d 1036
 Curtis B. TUSSEY, Sr., Petitioner,
v.
ISLAND CREEK COAL COMPANY and Old Republic Insurance
Company, Respondents,
Director, Office of Workers' Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 92-3032.
 United States Court of Appeals,
Sixth Circuit.
 Submitted Dec. 4, 1992.
Decided Jan. 13, 1993.
 
 Curtis Tussey (briefed), pro se.
 Ann B. Rembrandt, Douglas A. Smoot (briefed), Jackson & Kelly, Charleston, WV, for Island Creek Coal Co., Old Republic Ins. Co.
 Roscoe C. Bryant, III (briefed), U.S. Dept. of Labor, Office of the Sol., Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.
 Before: MILBURN and BATCHELDER, Circuit Judges; and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 This is an appeal from a final decision of the Benefits Review Board (BRB) under the Black Lung Benefits Act, as amended, 30 U.S.C. §§ 901-945 (1988), and regulations of the Secretary of Labor promulgated pursuant to the Act. An administrative law judge (ALJ) found that a 68 year old former coal miner who had more than 39 years of qualifying coal mine employment, who had pneumoconiosis and was totally disabled, was not entitled to benefits because the claimant had failed to establish that the disability is of respiratory or pulmonary origin or is due to pneumoconiosis. The Benefits Review Board upheld the denial. We reverse and remand for an award of benefits.
 
 I.
 
 2
 Curtis Tussey was born in 1918 and completed the ninth grade in school. At age nineteen he began working in underground coal mines. Between 1937 and 1974, he worked a total of more than 30 years in various mines. Before he quit mining in 1974 and became a federal mine inspector, he began experiencing breathing problems. At about that time, he suffered a heart attack for which he was hospitalized. He experienced no further problems with his heart, taking daily medication as prescribed. After recovering fully from the heart attack, Tussey returned to his inspector's job and continued in that work until 1983, when he retired.
 
 
 3
 In 1983 Tussey consulted a family physician, Dr. Arnett, because he was "smothering to death." After considering a lung x-ray, the doctor prescribed medication and directed Tussey to have oxygen and a "breathing machine" installed in his home. Since that time he has used the machine and the oxygen daily. Tussey testified that he has so little breath that he hires a boy to cut his small lawn. He can walk a half block before he must stop to rest, cannot help with the housework, and spends most of his time "sitting in a chair, watching television, if there's something on I want to watch." Tussey was hospitalized in 1983 for breathing problems, and Dr. Sundaram, a pulmonary specialist, began treating him.
 
 
 4
 Tussey's work as a mine inspector required no lifting or carrying, and little standing or walking. He had a four-wheel drive vehicle that he could take right to a surface mine that he was inspecting. As a mine inspector, Tussey had frequent physical exams and was found fit to continue in that job until he took sick leave just before retiring in 1983. One of the examining doctors told him, "There's something on the lungs," but that "it could be a misprint." Tussey quit his one-pack a day cigarette habit in 1983.
 
 II.
 A.
 
 5
 Tussey filed his first application for black lung benefits in 1980. That application was denied and he filed the present application in 1983. The matter was referred for a hearing on June 15, 1984. The ALJ held the hearing on September 30, 1986, and issued his decision on March 2, 1987. The ALJ specifically found that Tussey was a credible witness. He ruled that Tussey's work as a mine inspector qualified as coal mine employment. Thus, he credited Tussey with a total of more than 39 years of coal mine work.
 
 
 6
 No witnesses other than Tussey testified at the hearing, but the ALJ considered a profusion of medical evidence, consisting of x-ray readings, pulmonary function studies, arterial blood gas tests, and physicians' reports. The x-ray evidence demonstrated that Tussey has coal workers' pneumoconiosis, and the ALJ so found. Several pulmonary function studies were "qualifying," that is, they produced readings which indicated that Tussey is totally disabled within the meaning of the Black Lung Benefits Act. Accordingly, the ALJ found that this evidence established a lung impairment that is totally disabling. Only one of several arterial blood gas tests produced a reading that established total disability, but the ALJ accepted two consulting physicians' opinions that this test, though apparently "qualifying," was unreliable for several reasons. On this basis, the ALJ made the following finding:
 
 
 7
 The reliable arterial blood gas evidence is non-qualifying and therefore does not support the conclusion that the miner is totally disabled. The arterial blood gas evidence is probative evidence contrary to the pulmonary function evidence. Thus, the pulmonary function evidence does not in and of itself establish the miner's total disability due to pneumoconiosis.
 
 B.
 
 8
 At this point the ALJ had determined that Tussey has coal workers' pneumoconiosis and that one measurement of his lungs' operation indicated that he is totally disabled while the other indicated that he is not. The ALJ then turned to the doctors' opinions as a "tie-breaker." The medical reports evidence a wide divergence of opinion both as to whether Tussey has pneumoconiosis and whether or not he is disabled. The ALJ acknowledged that he is required to give greater weight to the opinion of a treating physician than to that of a mere examining or consulting physician. Thus, he stated in his decision, that the opinion of Dr. Sundaram, the pulmonary specialist who treated Tussey, was deserving of great weight.
 
 
 9
 Dr. Sundaram submitted two medical reports in regard to Tussey, one in 1983 and one in 1986. In one report, he found four conditions: (1) Coal workers' pneumoconiosis; (2) Chronic obstructive pulmonary disease; (3) Angina; and (4) Cardiac arrhythmia from history. He found significant limitations in movement involving reaching heights and exposure to high temperature or humidity. He observed that Tussey could "hardly" walk a distance of two blocks, could not lift any weight and could "hardly" go up two to three steps. Noting that Tussey had experienced significant exposure to coal dust, Dr. Sundaram stated his conclusion:
 
 
 10
 Physical examination, pulmonary function tests and radiological examination suggestive of CWP [coal workers' pneumoconiosis], has significant functional limitations as mentioned above. Believe he is unable to indulge himself in any gainful employment and as such he is disabled.
 
 
 11
 In a separate consultation report in response to a request from a Dr. Hieronymus, Dr. Sundaram stated:
 
 
 12
 Patient did deep mining for nearly 35 years and subsequently worked as a mining inspector and has functional limitations as mentioned above. He has radiological and clinical evidence for coal worker's pneumoconiosis. In view of the fact that the patient has no other vocational skills or training, and in view of the significant functional limitations mentioned above, believe the patient is totally disabled and not in position to engage himself in any gainful employment.
 
 
 13
 In both reports, Dr. Sundaram noted the old heart attack, but did not relate it to Tussey's disability. In the second report referred to above, his only reference to the patient's heart was: "Did not show any gallop. No significant abnormal murmurs could be appreciated at this time." Nevertheless, the ALJ found Dr. Sundaram "did not attribute the disability to any one or more diseases or indicate whether respiratory or cardiac condition is its cause. Thus, his opinion is relevant only to the question of whether claimant is totally disabled, but, not to the question of whether he is disabled by pneumoconiosis." The ALJ then referred to a report by Dr. Dahhan, a non-treating physician who concluded following a physical exam that Tussey had "the respiratory physiological capacity" to do the work of a federal mine inspector, but, that the cardiac problems might interfere with his employment. This report was made one month after Dr. Sundaram's second report.
 
 
 14
 The ALJ discussed other medical evidence, but appeared to base his decision principally upon the medical reports of Dr. Sundaram and Dr. Dahhan, and on that of a non-treating, non-examining physician, Dr. Kress.
 
 
 15
 The ALJ's ultimate conclusion was that although the relevant evidence does show by its preponderance that Tussey is totally disabled, "it does not establish either that the disability is respiratory or pulmonary in nature or that it is due to pneumoconiosis."
 
 III.
 
 16
 Since Tussey's claim was filed after March 31, 1980, the ALJ properly considered it under the Secretary of Labor's permanent regulations found at 20 C.F.R. Part 718. Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989). To establish eligibility for benefits under Part 718, a claimant must prove: (1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis. Id.; 20 C.F.R. §§ 718.2, 718.202-718.205.
 
 A.
 
 17
 The ALJ determined that the x-ray evidence established that Tussey has pneumoconiosis as defined in § 718.202(a)(1). The ALJ also found that Tussey had established 39 years of coal mine employment. This entitled Tussey to the presumption contained in § 718.203 that if a miner has pneumoconiosis and was employed for ten or more years in the coal mines, there is a rebuttable presumption that the pneumoconiosis arose out of coal mine employment. Thus the ALJ found that the first and second requirements of Part 718 were met. There is no dispute as to either of these requirements. The ALJ concluded, however, that the third requirement was not met. In reaching this conclusion he stated that the preponderance of the evidence shows that Tussey is "totally disabled, ... [but] does not establish either that the disability is respiratory or pulmonary in nature or that it is due to pneumoconiosis."
 
 
 18
 To satisfy the third requirement, a claimant must prove that he has a totally disabling pulmonary or respiratory condition and that this is due (at least in part) to his pneumoconiosis. Adams, 886 F.2d at 825. Upon proving that he has a totally disabling respiratory impairment Tussey is entitled to the additional presumption contained in § 718.305. For claims filed between April 1, 1980 and December 31, 1981, § 718.305 entitles a miner who was employed in underground coal mines for at least fifteen years and who is totally disabled with a respiratory or pulmonary impairment to a rebuttable presumption that he is totally disabled due to pneumoconiosis. This presumption "may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine." § 718.305(a).
 
 
 19
 A miner may establish the existence of a totally disabling respiratory impairment by one of, or a combination of, four methods set forth at 20 C.F.R. § 718.204(c). The regulation provides that "[i]n the absence of contrary probative evidence," a claimant establishes disability by means of (1) pulmonary function tests showing specified values or (2) arterial blood gas tests showing specified values; or (3) diagnoses of pneumoconiosis and cor pulmonale with right sided congestive heart failure; or (4) an opinion of disability by "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques."
 
 
 20
 The ALJ determined that the pulmonary function study evidence established a disabling respiratory impairment but then found that the arterial blood gas studies did not support a finding of respiratory disability. The ALJ stated that "[a]fter carefully weighing the pulmonary function evidence, I find that it establishes that the miner is totally disabled." In discussing the reliable arterial blood gas evidence the ALJ stated that it was "probative evidence contrary to the pulmonary function evidence. Thus, the pulmonary function evidence does not in and of itself establish the miner's total disability due to pneumoconiosis." Section 718.204(c)(3) was not relevant because no evidence was offered to show cor pulmonale with right sided congestive heart failure. The ALJ then characterized the opinions of the physicians as not assessing a totally disabling pulmonary impairment. In weighing all the evidence under § 718.204(c) the ALJ concluded that the preponderance of evidence did not establish that a total respiratory or pulmonary disability was present. Although the ALJ followed the right procedure in weighing all the evidence, he made a wrong turn and his ultimate finding is not supported by substantial evidence.
 
 B.
 
 21
 The record contains six reliable pulmonary function studies. Four are qualifying. This evidence supports a finding of total respiratory disability. The ALJ, however, erred in finding the arterial blood gas studies contradicted the pulmonary function evidence. The Board has long recognized "[r]esults from these two tests may consistently have no correlation since coal workers' pneumoconiosis may manifest itself in different types of pulmonary impairment." Gurule v. Director, OWCP, 2 Black Lung Rep. (MB) 1-772, 1-777 to 1-178 (Ben.Rev.Bd.1979), aff'd, 653 F.2d 1368 (10th Cir.1981), abrogated on other grounds, Lukman v. Director, OWCP, 896 F.2d 1248 (10th Cir.1990). See also Sheranko v. Jones and Laughlin Steel Corp., 6 Black Lung Rep. (MB) 1-797, 1-798 (Ben.Rev.Bd.1984) ("blood gas studies and pulmonary function studies measure different types of impairment"). Although the arterial blood gas evidence is probative, it cannot be seen as being a direct offset or "contrary" to the findings of the pulmonary function evidence. The pulmonary function evidence is still evidence of total disability and the ALJ must weigh the evidence of all the categories in combination with this pulmonary function evidence.
 
 
 22
 The medical opinion evidence consisted of numerous physical examinations in the 1970s and early 1980s that found Tussey meeting the requirements of a mine safety and health inspector. In 1980, Drs. Hieronymus and Wright diagnosed Tussey with severe obstructive pulmonary disease, mild restrictive defect, small airway disease, moderate hypoxemia, moderate function aerobic impairment, and ruled out coal workers' pneumoconiosis. In that same year, Dr. Crisalli found that Tussey was not totally or permanently disabled and classified him as being in a range of 20-30 percent pulmonary function impairment and that the impairment was suggestive of emphysema and this was consistent with Tussey's smoking history. Dr. Arnett in 1983, diagnosed Tussey as having chronic obstructive pulmonary disease with acute exacerbation and coal workers' pneumoconiosis. Dr. Sundaram, the treating specialist, found Tussey totally disabled in 1983 and in 1986 concluded that Tussey had coal workers' pneumoconiosis, and chronic obstructive pulmonary disease. In 1986, Dr. Dahhan found no radiological evidence of occupational pneumoconiosis and concluded that Tussey had the physiological capacity from a respiratory standpoint to continue his previous coal mining employment as inspector. And finally, Dr. Kress, who reviewed the medical evidence, concluded that the pneumoconiosis was not preventing Tussey from working. In reviewing this medical opinion evidence to determine if Tussey was disabled, the ALJ erred in considering opinions as to whether Tussey had pneumoconiosis. The record already established that he had pneumoconiosis that arose from coal mine employment, and the only remaining question was whether Tussey was totally disabled by reason of a pulmonary or respiratory impairment.
 
 IV.
 
 23
 We have a limited scope of review over decisions of the Benefits Review Board. The Board's decisions must only be supported by substantial evidence. Zimmerman v. Director, OWCP, 871 F.2d 564, 567 (6th Cir.1989). The standard of review for the Board and this court are the same. Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986). Therefore the focus of our review is whether the ALJ's decision is supported by substantial evidence. Zimmerman, 871 F.2d at 567.
 
 A.
 
 24
 The Director of the Office of Workers' Compensation Programs correctly asserts that an ALJ must weigh all evidence in all categories of § 718.204(c) in order to make a disability determination, citing Bosco v. Twin Pines Coal Co., 892 F.2d 1473, 1479-80 (10th Cir.1989). The four subsections of § 718.204(c) are introduced by language that states "[i]n the absence of contrary probative evidence." This in essence means that even after one of the subsections in § 718.204(c) has been satisfied, the other evidence as it pertains to the other subsections must be considered. The Director maintains that the ALJ did not adequately discuss and consider the medical opinion evidence in concluding that Tussey did not establish a totally disabling respiratory impairment, and argues for a remand to the ALJ for further consideration of this evidence.
 
 
 25
 The respondent, Island Creek, argues that the ALJ based his decision on the entire record and it is supported by substantial evidence. Island Creek notes that the ALJ was doing his job properly when he weighed the evidence and Island Creek argues that none of the doctors reached conclusions that were consistent with required findings under § 718.204(c).
 
 
 26
 Tussey had no attorney in this court, but he filed a pro se brief in which he contends that the attempt to rebut the finding of total disability as established by the pulmonary function studies on the basis of "arterial blood gas studies which were non-qualifying because of technical error, is completely inappropriate and improper." He also argues that he is entitled to benefits on the basis of the § 718.305 presumption heretofore described.
 
 B.
 
 27
 In considering the medical opinions the only relevant evidence is that which addresses the question of whether there is a totally disabling respiratory or pulmonary impairment. Bosco, 892 F.2d at 1480. The Tenth Circuit in Bosco, discussing § 718.204(c)'s determination of total disability, stated "that evidence relevant to whether pneumoconiosis is the cause of a claimant's total disability is not relevant at this qualifying stage under the statutory scheme for claims between April 1, 1980, and December 31, 1981. Only evidence relevant to the existence of a totally disabling respiratory or pulmonary impairment is relevant at this stage." Id. The Bosco court explained that this construction is required by the way in which sections 718.204 and 718.305 intersect.
 
 
 28
 Medical opinions in this record, specifically those of Drs. Hieronymus, Wright, Arnett, White and Sundaram, combined with the pulmonary function evidence, are sufficient probative evidence to establish total respiratory or pulmonary disability. Properly considered, other medical opinion evidence and the arterial blood gas tests did not offset this affirmative evidence. In fact Dr. Kress even concluded that there was evidence of "some chronic obstructive pulmonary disease." Dr. Kress simply opined it was caused by cigarette smoking. As indicated above, at this stage the cause is irrelevant to the specific inquiry of whether there is a total disabling respiratory or pulmonary impairment. It should be noted that the main point of Dr. Kress' report was that Tussey did not have coal workers' pneumoconiosis. This was already established by the x-ray evidence, depriving his observations of any probative value.
 
 C.
 
 29
 It is clearly established that opinions of treating physicians are entitled to greater weight than those of non-treating physicians. See, e.g. Sexton v. Director, OWCP, 752 F.2d 213, 215-16 (6th Cir.1985); Collins v. Secretary of Health and Human Services, 734 F.2d 1177, 1179-80 (6th Cir.1984). The ALJ in the present case gave lip service to this rule, but failed to apply it. Properly considered, Dr. Sundaram's reports and opinions support a finding of a totally disabling respiratory impairment. He diagnosed severe obstructive pulmonary disease and in the same document stated that Tussey was totally disabled and not able to work. Dr. Sundaram's conclusions were not properly credited and weighed by the ALJ. Given their proper deference, Dr. Sundaram's findings add significant weight to the pulmonary function evidence that indicated Tussey was totally disabled.
 
 
 30
 The ALJ seems also to have lost sight of the command in 20 C.F.R.'s 718.2(c):
 
 
 31
 In enacting Title IV of the Act, Congress intended that claimants be given the benefit of all reasonable doubt as to the existence of total or partial disability or death due to pneumoconiosis. This part shall be construed and applied in that spirit and is designed to reflect that intent. However, no claim shall be approved unless the record considered as a whole, in light of any applicable presumptions, provides a reasonable basis for determining that the criteria for eligibility under the Act and this part have been met.
 
 
 32
 As this court stated in Southard v. Director, OWCP, 732 F.2d 66, 71 (6th Cir.1984), "The Act is remedial in nature, and it must be liberally construed to include the largest number of miners as benefit recipients."
 
 
 33
 A careful study of this record convinces us that the ALJ did not approach this case in this manner. When all of the evidence under § 718.204(c) is properly considered, relying only upon that evidence which is relevant, it cannot be said that the substantial evidence supports a finding of no total respiratory or pulmonary disability. Once a finding of total disability caused by a respiratory or pulmonary impairment is made, Tussey is entitled to the rebuttable presumption in § 718.305 that he is totally disabled due to pneumoconiosis. The presumption may be rebutted only upon showing either that Tussey does not have pneumoconiosis or that his impairment did not result from work in coal mines. Island Creek produced no evidence with respect to either rebutting condition.
 
 
 34
 The decision of the BRB is reversed and the case is remanded with directions to enter judgment awarding benefits to Tussey.
 
 
 35
 Tussey is now 74 years old and has had coal workers' pneumoconiosis (black lung disease) at least since 1983. His claim, filed in that year, was not decided at the first level until four years later. Then more than three years elapsed between the filing of the final briefs before the BRB and that body's decision affirming the ALJ's denial of benefits. It took the BRB thirteen months to overrule Tussey's motion for reconsideration.
 
 
 36
 The mandate of this court will issue forthwith. Tussey was represented by an attorney before the ALJ, but has prevailed in this court without legal assistance. His benefits will not be reduced by an award of attorney fees.