14 F.3d 601
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John Henry MCGUIRE, Petitioner,
v.
LITTLE BILL COAL COMPANY and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 93-3008.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1994.
 
 Before: GUY and RYAN, Circuit Judges; and MILES, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 This pro se appeal involves the claim of the petitioner, John Henry McGuire, for black lung benefits, pursuant to 30 U.S.C. Secs. 901 et seq. The petitioner's attempts to collect benefits have been ongoing for twenty years, and the claim on appeal is the third claim denied by respondent United States Department of Labor. The petitioner's sole issue on appeal is whether there is substantial evidence in the record to support the Department of Labor's determination that petitioner's respiratory disease was not disabling. We conclude that the Department of Labor's conclusion that the petitioner was not disabled by pneumoconiosis, or any other respiratory or pulmonary ailment, is supported by substantial evidence, and affirm the decision of the Benefits Review Board.
 
 I.
 
 2
 The petitioner, John McGuire, began working in the underground coal mines in 1942. He now suffers a myriad of health problems. He has broken his back on three different occasions. He also suffers from cardiovascular disease, and recently underwent open-heart surgery. In addition, since 1971, he has exhibited some evidence of chronic pulmonary disease.
 
 
 3
 In March 1971, the petitioner was denied employment with Kentland Elkhorn, a Kentucky mining operation, when his pre-employment x-ray revealed abnormalities consistent with pneumoconiosis, a progressive disease. Thus began a series of conflicting x-ray reports and medical assessments that have spanned some twenty years.
 
 
 4
 In June 1973, the petitioner filed a claim for Part B disability benefits with the Social Security Administration. Immediately thereafter, he stopped working in the mines. When the Social Security Administration denied the petitioner's benefits claim in March 1974, the petitioner filed a claim for Part C benefits with the Department of Labor. The Labor Department denied the second claim for benefits in April 1976. The petitioner did not appeal this denial.
 
 
 5
 In 1978, however, subsequent to legislation amending black lung benefits laws, the petitioner filed an election card, seeking the Labor Department's review of his 1973 claim. The Department reviewed both of his claims, denying the 1974 claim in June 1979, and the 1973 claim in January 1980. In April 1983, the petitioner filed yet a third claim for disability benefits. He also filed a claim for disability insurance benefits with the Social Security Administration. Between this time and the Labor Department's final denial of his third claim, the petitioner consulted or treated with six different physicians. Three other physicians reviewed the petitioner's medical files and test results. No tests--x-rays, pulmonary function tests, or blood gas studies--yielded qualifying results. Out of all nine consulting or reviewing doctors, only the petitioner's treating physician, who specialized in sports and emergency medicine, concluded that the petitioner was disabled, but not as a result of pulmonary dysfunction alone. Five of the nine physicians expressly found that the petitioner retained the lung capacity to do coal mining work.
 
 
 6
 Ultimately, the petitioner and his counsel appeared at a hearing before an administrative law judge in May 1990. On October 11, 1990, the ALJ issued an opinion and order denying benefits, based on his determination that the petitioner failed to establish that his pneumoconiosis was totally disabling. On November 19, 1992, the Benefits Review Board denied the petitioner's motion for reconsideration of the ALJ's order. This appeal followed.
 
 II.
 
 7
 Our role in reviewing an ALJ's determination in a black lung claim is limited. "[I]f supported by substantial evidence in the record considered as a whole," the ALJ's factual findings are conclusive. Zimmerman v. Director, Office of Workers' Compensation Programs, 871 F.2d 564, 565 (6th Cir.1989). " 'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (1985) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Where the substantial evidence requirement is satisfied, the court may not set aside the ALJ's findings, "even if [the court] would have taken a different view of the evidence were [it] the trier of fact." Ramey v. Kentland Elkhorn Corp., 755 F.2d 485, 486 (6th Cir.1985).
 
 III.
 
 8
 The petitioner argues that he proved he suffered from pneumoconiosis, and that this finding is tantamount to a finding of total disability. The petitioner also maintains that the ALJ erred in not giving appropriate deference to the petitioner's treating physician, Dr. Bryan. The petitioner's claims are unconvincing.
 
 
 9
 In claims filed after March 31, 1980, a claimant seeking to establish eligibility for black lung benefits must prove "(1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose at least in part out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis." Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1038 (6th Cir.1993). The claimant must prove all three elements by a preponderance of the evidence. Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989).
 
 
 10
 The third element, total disability, does not require that the pneumoconiosis "in and of itself" be totally disabling. Id. at 821. Rather, the regulations provide that the claimant can satisfy his burden by proving he suffers from a respiratory or pulmonary impairment, "significantly related to, or substantially aggravated by, dust exposure in coal mine employment," 20 C.F.R. Sec. 718.201, and "a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that [the] miner's respiratory or pulmonary condition prevents ... the miner from engaging in [his usual coal mine work]." 20 C.F.R. Sec. 718.204(c)(4). We have interpreted these combined regulations to require the claimant to establish that he suffers from pneumoconiosis, and that "his totally disabling respiratory impairment ... was due 'at least in part' to his pneumoconiosis." Adams, 886 F.2d at 825 (citations omitted).
 
 
 11
 Alternatively, the claimant can prove total disability by producing qualifying x-rays, pursuant to 20 C.F.R. Sec. 718.304, or by producing qualifying pulmonary function or blood-gas tests or evidence of "cor pulmonale with right sided congestive heart failure," pursuant to 20 C.F.R. Sec. 718.204(c). See Tussey, 982 F.2d at 1040.
 
 
 12
 In addition, where, as here, the dispute involves a duplicate or second benefits claim filed more than one year after a final denial of a previously filed claim, the evidentiary inquiry into total disability is extremely limited. A duplicate claim of this nature "shall also be denied, on the grounds of the prior denial, unless the [agency] determines that there has been a material change in conditions." 20 C.F.R. Sec. 725.309(d).
 
 
 13
 In defining what new evidence is necessary to prevent denial of the duplicate claim, the Seventh Circuit has held:
 
 
 14
 A material change in conditions means either that the miner did not have black lung disease at the time of the first application but has since contracted it and become totally disabled by it, or that his disease has progressed to the point of becoming totally disabling although it was not at the time of the first application.... It is not enough that the new application is supported by new evidence of the disease or disability, because such evidence might show merely that the original denial was wrong, and would thereby constitute an impermissible collateral attack on that denial.
 
 
 15
 Sahara Coal Co. v. Office of Workers' Compensation Programs, 946 F.2d 554, 556 (7th Cir.1991) (citations omitted). The court gives the example of the claimant who submitted no evidence with his initial claim, had his claim denied, then waited over a year to file a second application, accompanied by overwhelming evidence:
 
 
 16
 If the evidence shows not that his condition has worsened since the first application but merely that he should not have been turned down, he has failed to demonstrate a material change in his condition; he merely is attempting to relitigate his claim.
 
 
 17
 See also Lukman v. Director, Office of Workers' Compensation Programs, 896 F.2d 1248, 1253 (10th Cir.1990). As a result, the only relevant evidence in a duplicate claim of this ilk is evidence tending to show that the claimant's condition has deteriorated since the initial claim denial.
 
 
 18
 In all claims, duplicate or initial, because pneumoconiosis is progressive, the ALJ is entitled to give greater weight to the most recent medical opinions, x-rays, and test results than to earlier, conflicting evidence. Saginaw Mining Co. v. Ferda, 879 F.2d 198, 205 (6th Cir.1989). Accord Fife v. Director, Office of Workers' Compensation Programs, 888 F.2d 365, 367-69 (6th Cir.1989). In addition, where medical opinions or test results conflict, we generally will defer to the ALJ's credibility determinations and resolutions of inconsistencies. Riley v. National Mines Corp., 852 F.2d 197, 198 (6th Cir.1988). While a treating physician's opinion usually is "entitled to greater weight than those of non-treating physicians," Tussey, 982 F.2d at 1042, this has never been a per se rule. For example, we have approved an ALJ's decision to discredit a treating physician's opinion where it was conclusory and not supported by objective data. Back v. Director, Office of Workers' Compensation Programs, 796 F.2d 169, 170-71 (6th Cir.1986). See also Fife, 888 F.2d at 367-68.
 
 
 19
 Here, we conclude that the petitioner failed to prove a totally disabling respiratory impairment, as required by 20 C.F.R. Sec. 718.204(c)(4). Rather, the petitioner's seeming disability stems from other afflictions which perhaps are exacerbated by his respiratory condition.
 
 
 20
 Of the objective tests conducted during the time frame applicable to the petitioner's duplicate claim, not one x-ray, pulmonary function test or blood gas test was qualifying. Even if this court were to consider the earlier tests, as did the ALJ, only one out of ten x-ray readings by properly qualified readers yielded a qualifying result. The ALJ was justified in discounting this reading, either because it was not the evidence of a deteriorating condition required in duplicate claims proceedings, see Sahara Coal, 946 F.2d at 556, or because it was superseded by many similarly authoritative negative readings, all from x-rays taken later in time. Similarly, the only qualifying pulmonary function study was conducted prior to the relevant time frame. All subsequent pulmonary function tests, at least four in number, were nonqualifying. Finally, no blood gas study conducted at any time yielded qualifying results, nor did the petitioner present any evidence that he suffered from "cor pulmonale with right sided congestive heart failure." 20 C.F.R. Sec. 718.204(c).
 
 
 21
 As to the medical opinions, no physicians during the relevant time period presented the requisite evidence that the petitioner was totally disabled by a "respiratory or pulmonary condition," as required by 20 C.F.R. Sec. 718.204(c)(4). Although the petitioner complains that the ALJ failed to give proper deference to the opinion of Dr. Bryan, the petitioner's treating physician, even Dr. Bryan did not conclude that the petitioner's respiratory ailment was disabling. Rather, Dr. Bryan opined only that the combination of the petitioner's spinal and respiratory afflictions precluded him from physical exertion. However, the test for eligibility is not "total disability" alone; it is total disability from a respiratory or pulmonary affliction. Moreover, Dr. Bryan offered no objective test results to support his conclusion. Accordingly, the ALJ was justified in discounting Dr. Bryan's conclusory testimony.
 
 
 22
 Finally, the great weight of the medical opinions was against a finding of a totally disabling respiratory condition. Other than Dr. Bryan, eight physicians, who either examined the petitioner or reviewed his medical records, failed to reach a conclusion that the petitioner's lung condition would preclude coal mining activity. All five physicians who rendered any opinion on the petitioner's ability to work expressly stated that he retained the pulmonary and respiratory capacity to work in the coal mines.
 
 IV.
 
 23
 Given the absence of probative evidence properly in the record, the petitioner did not sustain his burden of proving total disability. The record is replete with evidence that the petitioner is not totally disabled by a respiratory affliction. Accordingly, the ALJ's findings and conclusions are supported by substantial evidence, and must be AFFIRMED.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior United States District Judge for the Western District of Michigan, sitting by designation