39 F.3d 1183
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Walter WILEY, Claimant-Appellant,
v.
CONSOLIDATION COAL COMPANY, Employer-Appellee,
and
Director, Office of Worker Compensation Programs, United
States Department of Labor, Party-in-Interest.
 No. 93-3371.
 United States Court of Appeals, Sixth Circuit.
 Oct. 28, 1994.
 
 Before: GUY and BATCHELDER, Circuit Judges; and McKEAGUE, District Judge.*
 PER CURIAM.
 
 
 1
 Claimant, William Wiley, appeals from a decision of an administrative law judge (ALJ), affirmed by the Benefits Review Board (Board), denying benefits under the Black Lung Benefits Act of 1969 (Act), as amended, 30 U.S.C. Sec. 901 et seq. Specifically, Wiley claims that the ALJ erred in finding that the interim presumption of disability had been rebutted. For the reasons that follow, we affirm.
 
 
 2
 Wiley is a 79-year-old male, who retired in 1977 after working approximately 43 years in the coal mines and at least 17 years at Consolidation Coal Company. On July 27, 1977, he filed an application for benefits under the Act, claiming he was disabled due to pneumoconiosis. The matter wended its way through administrative appeals, having arrived at this court once before. Wiley v. Consolidation Coal Co., 892 F.2d 498 (6th Cir.1989), modified, 915 F.2d 1076 (1990). Disagreeing with the ALJ's interpretation of the relevant regulation, we remanded the case with instructions to invoke the interim presumption of disability pursuant to 20 C.F.R. Sec. 727.203(a)(2) and to hear rebuttal argument pursuant to 20 C.F.R. Sec. 727.203(b)(4). On remand, the ALJ reviewed the evidence and found that Consolidation Coal had proffered enough evidence to rebut the interim presumption and, accordingly, denied an award of benefits. The Board then affirmed the ALJ's decision.
 
 
 3
 Our scope of review in this case is limited. Although this appeal comes to us from a decision of the Board, this court reviews the substance of the decision of the ALJ, not of the Board. See Tussey v. Island Creek Coal Co., 982 F.2d 1036, 1041 (6th Cir.1993) ("the focus of our review is ... the ALJ's decision"). We may not engage in a de novo review of the evidence, and we may not second guess the credibility findings of the ALJ. We must affirm the decision of the ALJ if it is supported by substantial evidence and in accordance with applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971). Once the interim presumption has been invoked, the claimant is entitled to an award of benefits unless the employer successfully carries its burden of persuasion to rebut the presumption. See Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 484 U.S. 135, 146 (1987). In determining whether the employer has met its burden on rebuttal "all relevant medical evidence shall be considered." 20 C.F.R. Sec. 727.203(b).
 
 
 4
 Section 727.203(b)(4) provides that the interim presumption of disability is rebutted if "[t]he evidence establishes that the miner does not, or did not, have pneumoconiosis." As the Third Circuit has noted:
 
 
 5
 [F]or the decisionmaker to conclude that the claimant does not suffer from pneumoconiosis, the party opposing an award of benefits must point to persuasive evidence which establishes that the claimant does not suffer from pneumoconiosis as defined by the statute and regulations--neither coal workers' pneumoconiosis, as that term is used in the medical profession, nor any other chronic dust disease of the lung arising out of coal mine employment.
 
 
 6
 Pavesi v. Director, Office of Workers' Compensation Programs, 758 F.2d 956, 965 (3d Cir.1985). See also Campbell v. Consolidation Coal Co., 811 F.2d 302, 304 (6th Cir.1987). The Act defines pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. Sec. 902(b). The administrative regulations promulgated pursuant to the Act expand on this definition:
 
 
 7
 This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosisanthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or aggravated by, dust exposure in coal mine employment.
 
 
 8
 20 C.F.R. Sec. 727.202. Thus, pneumoconiosis, as defined by the Act and regulations, embraces coal workers' pneumoconiosis, as that term is used in the medical profession, and other respiratory or pulmonary impairments related to, or aggravated by, coal mine employment. See Campbell, 811 F.2d at 304; Pavesi, 758 F.2d at 965.
 
 
 9
 The first time this case was before the ALJ, he reviewed the x-ray evidence. He noted that the chest x-rays taken prior to 1969 failed to reveal any indication of pneumoconiosis. Later X-rays, however, spanning a period from 1977 through 1981, were subject to conflicting readings as to the presence of pneumoconiosis. Dr. Yobbagy interpreted the 1977 x-ray as positive for the disease, but Dr. Francke, a "B" reader,[1] and Dr. Morgan disagreed. A 1980 x-ray was interpreted by both Dr. Kress and Dr. Vargas as being negative. According to the ALJ, "[s]ince pneumoconiosis is a chronic progressive disease, it would not be expected to disappear from a 1980 x-ray if it were present on a film taken in 1977." Thus, it appears the ALJ reasoned that as of 1980 the presence of pneumoconiosis could not be established by reference to the x-rays.
 
 
 10
 The most recent x-ray was taken on March 21, 1981. This film was interpreted as positive by Drs. Brandon and Bassali, both of whom are "B" readers, and by Dr. Wymer, a board certified radiologist.[2] Although they each read the x-ray as positive for pneumoconiosis, they differed as to what exactly they saw. Dr. Wymer noted type "p" opacities; Dr. Bassali noted type "s" and "t" opacities; and Dr. Brandon observed type "t" opacities. Dr. Wymer found a profusion of 1/1; Dr. Bassali observed a profusion of 2/3; and Dr. Brandon assessed a profusion of 2/1. The divergence of their opinions, reasoned the ALJ, cast doubt on the reliability and verifiability of their scientific methodology. Moreover, two other doctors, Drs. Wiot and Felson, both of whom are "B" readers and in the ALJ's opinion more qualified, interpreted the same x-ray as negative for pneumoconiosis. After weighing these opinions, the ALJ "found on balance, the x-ray evidence was negative for pneumoconiosis." Moreover, the ALJ believed support for this conclusion could be drawn from the earlier opinion of this court, which "did not disturb" his previous findings as to the x-ray evidence.
 
 
 11
 Both parties, the ALJ, and the Board agree that negative x-ray evidence alone is insufficient under 20 C.F.R. Sec. 203(b)(4) to rebut the interim presumption of disability. See Peabody Coal Co. v. Holskey, 888 F.2d 440, 442 (6th Cir.1989) ("Negative x-rays do not conclusively rebut the interim presumption. A miner may be found to be totally disabled as a result of pneumoconiosis in spite of a lack of positive x-rays."). Therefore, the x-rays were just one factor considered by the ALJ in determining whether Consolidation Coal had rebutted the presumption.
 
 
 12
 Most important to the ALJ's conclusion that Consolidation Coal had successfully rebutted the interim presumption of disability were three medical opinions. On October 25, 1977, Dr. Carniero examined Wiley. As the ALJ observed, "[t]he doctor obtained work and medical histories, and was informed about claimant's symptoms. In a report dated November 18, 1977, Dr. Carniero ... concluded that [Wiley] has chronic bronchitis and probable pneumoconiosis related to coal mine employment." Dr. Carniero's report, however, " 'fails to indicate that he (Dr. Carniero) relied upon any of the clinical test results or x-rays then available regarding [Wiley's] condition.' "
 
 
 13
 Dr. Kress examined Wiley in 1980. He noted "some rales" but normal resonance and a symmetrical chest. Unlike Dr. Carniero, however, Dr. Kress reviewed the available clinical studies and x-rays and found only a mild impairment with no disability and no medical evidence to suggest coal workers' pneumoconiosis. In 1985, Dr. Kress updated and reaffirmed his earlier findings. Also in 1985, Dr. Zaldivar corroborated and confirmed Dr. Kress's opinion. Although Dr. Zaldivar did not examine Wiley, he did review the reports and studies prepared by the other doctors in reaching this conclusion.
 
 
 14
 The ALJ reviewed these medical opinions and accorded more weight to those of Drs. Kress and Zaldivar. In so doing, the ALJ opined that "Dr. Carniero's report lacks the scope and comprehensive in-depth consideration of all relevant medical factors of the type provided by Drs. Kress and Zaldivar." The ALJ also noted that the opinions of Drs. Kress and Zaldivar were based upon physical examination findings and an analysis of all of the available clinical data. Moreover, certain data, the ALJ stated, was secured more recently and was not available to Dr. Carniero when that doctor formed his opinion. Based on these reports and the x-rays, the ALJ concluded that Wiley "does not have pneumoconiosis and does not have a respiratory or pulmonary impairment arising in whole or in part" from his coal mine employment.
 
 
 15
 Wiley challenges the ALJ's conclusion primarily by drawing our attention to various ventilatory studies and medical reports that indicate he has some type of respiratory impairment.[3] These same pulmonary studies, however, served as the basis for invoking the interim presumption of disability in favor of Wiley and are subject to being questioned. When this case was previously before this court on appeal, we observed: "Opinions and other evidence tending to discredit these ... pulmonary function studies ... may be considered in conjunction with a rebuttal of the interim presumption pursuant to Sec. 727.203(b)." Wiley, 892 F.2d at 503. Thus, the ALJ was free to consider other evidence and draw his own conclusions. As we discussed in Wiley, there were medical opinions questioning the reliability of the ventilatory studies, id. at 502, and we cannot say that to the extent the ALJ chose to discount the value of these studies he erred.
 
 
 16
 Moreover, as Consolidation Coal notes, a claimant may not merely present evidence showing that he suffers from a respiratory impairment; the impairment must "aris[e] out of coal mine employment." 20 C.F.R. Sec. 727.202; see Tennessee Consolidation Coal Co. v. Crisp, 866 F.2d 179, 187 n. 5 (6th Cir.1989) (noting that a proper avenue for rebuttal under 20 C.F.R. Sec. 727.203(b)(4) is to prove that the claimant's disability is not "significantly" related to coal dust). In reviewing Wiley's claim, the ALJ gave greater weight to the opinions and x-rays that specifically discussed pneumoconiosis and coal dust. While some of the ventilatory studies and medical opinions cited by Wiley suggest he may have a minor or even a significant respiratory impairment, they do not identify the cause of this impairment. The ALJ reviewed all of the evidence and determined that Wiley neither had pneumoconiosis nor a respiratory impairment arising out of his coal mine employment. This is the essence of the fact-finding function--to evaluate conflicting evidence, assign relative weight, and draw reasonable inferences. We believe that when the record on a whole is considered, there is substantial evidence to support the ALJ's conclusion.
 
 
 17
 Wiley further contends that the ALJ erred in failing to follow the Blevins' guidelines.[4] These guidelines apply to claims requiring inquiry into the relative significance of cigarette smoking and coal dust exposure in evaluating a miner's pulmonary disease. Although Wiley's smoking history was referenced,[5] the ALJ did not base his decision on it; instead, the ALJ noted that in some of the medical opinions indicating Wiley had a respiratory impairment the doctors opined that it might be attributable to his obesity[6] or smoking history. Under these circumstances, we do not believe the ALJ was required to apply the dictates of Blevins.
 
 
 18
 Finally, Wiley argues that the Board and ALJ erred in failing to apply 20 C.F.R. Sec. 718 and in failing to find entitlement under 20 C.F.R. Sec. 410. Because Wiley has neither clinical nor statutory pneumoconiosis, there is no merit to these arguments.[7]
 
 
 19
 AFFIRMED.
 
 
 
 *
 Honorable David W. McKeague, United States District Court for the Western District of Michigan, sitting by designation
 
 
 [1]
 A "B" reader of x-rays has received a special certification from the National Institute of Occupational Safety and Health. See Orange v. Island Creek Coal Co., 786 F.2d 724, 727 (6th Cir.1986)
 
 
 [2]
 In Woodward v. Director, Office of Workers' Compensation Programs, 991 F.2d 314 (6th Cir.1993), this court observed that the ALJ correctly noted that "the Sixth Circuit Court of Appeals has taken judicial notice of the fact that board certified radiologists have comparable qualifications to B-readers." Id. at 316 n. 4
 
 
 [3]
 A discussion and summary of these ventilatory studies can be found in Wiley, 892 F.2d at 500
 
 
 [4]
 The "Blevins' guidelines" are set forth in Blevins v. Peabody Coal Co., 1 Black Lung Reporter (MB) 1-1023 (Ben.Rev.Bd.1978), and Blevins v. Peabody Coal Co., 6 Black Lung Reporter (MB) 1-750 (Ben.Rev.Bd.1983)
 
 
 [5]
 Other than an occasional cigar, there is no evidence that Wiley has a "smoking history."
 
 
 [6]
 Wiley was approximately 5' 10" and weighed 210 pounds during the time of these studies
 
 
 [7]
 Wiley also argues that the ALJ erred in not applying the true doubt rule. Recently, however, the Supreme Court held that the true doubt rule violates section 7(c) of the Administrative Procedure Act. Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 114 S.Ct. 2251, 2259 (1994). Therefore, this argument has no merit